UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 21-49825

JOHN HERMAN LEMANSKI, JR.,                      Chapter 7

        Debtor.                         Judge Thomas J. Tucker

_____/

**OPINION REGARDING TRUSTEE'S OBJECTION TO EXEMPTIONS**

**I. Introduction**

    This case came before the Court for a telephonic hearing on May 18, 2022, on the Chapter 7 Trustee's objection to the Debtor's claims of exemption (Docket # 38, the "Exemption Objection"). Counsel for the Chapter 7 Trustee and counsel for the Debtor appeared at the hearing. At the conclusion of the hearing, the Court took the matter under advisement.

    The Court has considered all of the documents that have been filed relating to the Exemption Objection, and has considered all of the written and oral arguments of the parties. For the reasons stated below, the Court will make certain findings and rulings relevant to the Exemption Objection, but will defer making any final decision on the claimed exemptions until after certain issues are decided, in an adversary proceeding to be filed by the Trustee.

**II. Jurisdiction**

    This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This contested matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B), and 157(b)(2)(O).

**III. Discussion**

The Debtor, John H. Lemanski, Jr., filed a voluntary Chapter 7 bankruptcy petition on December 21, 2021, commencing this case. In his Schedule A/B filed on the petition date, the Debtor disclosed that he owned a membership interest in a company called "St. Clair Property Management Group, LLC" (the "LLC"), with a value of $235,627.53. The Debtor claimed a 100% ownership interest in this asset, but at the same time he described his ownership as "Sole membership interest jointly owned with spouse."[1] In his Schedule C, also filed on the petition date, the Debtor claimed exemptions in this asset, in an amount of 100%, based on three Michigan statutes: Mich. Comp. Laws §§ 450.4504, 600.6023a, and 557.151.[2] The Chapter 7 Trustee timely objected to these claims of exemption.

The Debtor contends that on the petition date, he and his non-filing spouse, Heather Lemanski, jointly owned a 100% membership interest in the LLC, as tenants by the entirety, and that this interest is exempt under one or more of the Michigan statutes cited above, except as against creditors with claims against both the Debtor and his spouse.

The Trustee disputes this claimed exemption. The Trustee contends, as his primary argument, that on the petition date, the Debtor and his spouse each individually owned a separate 50% membership interest in the LLC. Because the Debtor's membership interest was not held jointly with his spouse, the Trustee argues, the Debtor's 50% interest in the LLC was not held in a tenancy by the entireties, and is not exempt under the Michigan statutes cited by the Debtor.

**A. The Debtor's membership interest in the LLC, under the 2013 Operating Agreement**

This dispute turns on the meaning of certain provisions in three agreements that were

---

[1] Schedule A/B (Docket # 1), item 19.

[2] Schedule C (Docket # 1).

2

signed by the Debtor and his spouse. These are (1) the original operating agreement for the LLC, dated October 17, 2013 (the "Operating Agreement");[3] (2) the first amendment to the Operating Agreement, which the Debtor and his spouse signed on March 20, 2020 (the "First Amendment");[4] and (3) the second amendment to the Operating Agreement, which the Debtor and his spouse signed on or shortly before August 17, 2020 (the "Second Amendment").[5] Each of these agreements was prepared for the Debtor and his spouse by an attorney, and the Debtor and his spouse had the benefit of legal advice from the drafting attorney with respect to all of the agreements. That attorney was the Debtor's current bankruptcy attorney, with respect to the First Amendment and the Second Amendment.

Section 3.1 of the Operating Agreement states:

> **3.1 Membership Interests.** Each Member owns a *Membership Interest* (as defined in the [Michigan Limited Liability Company] Act) in the Company, represented by the Member's Shares in the Company. Each of the Members has made an initial capital contribution and owns the number of Shares specified below:
>
> | Member | Initial Capital Contribution | Shares |
> |---|---|---|
> | Heather Lemanski | $100 | 1,000 |
> | John Lemanski | $100 | 1,000[6] |

---

[3] A copy of the Operating Agreement is filed at Docket # 38-1, at pdf pp. 5-17, and also at Docket # 39-4.

[4] A copy of the First Amendment is filed at Docket # 38-2, and also at Docket # 39-5.

[5] A copy of the Second Amendment is filed at Docket # 38-3, and also at Docket # 39-6.

[6] Operating Agreement at 2, § 3.1 (bold and italics in original).

The Trustee is correct that under this Section 3.1 of the Operating Agreement, at the LLC's formation, the Debtor and his spouse each owned, individually rather than jointly, 1,000 membership shares in the LLC. Thus, the Debtor and his spouse each individually owned a separate 50% membership interest in the LLC. They did not own any membership interest jointly, as the Debtor contends. This is the unambiguous meaning of Section 3.1 of the Operating Agreement. "'[Where] the language of the contract is unambiguous, [a court must] construe and enforce the contract as written.'" *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007) (footnote omitted) (quoting *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003) (citation omitted)) ("'[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law,'" and "'[i]f the language of the contract is unambiguous, we construe and enforce the contract as written.'").

**B. The Debtor's transfer of his separate 50% membership interest by means of the First Amendment**

The Debtor and his spouse amended the 2013 Operating Agreement on March 20, 2020 when they signed the First Amendment, a document drafted by the Debtor's current bankruptcy attorney.[7] Among other changes, the First Amendment amended § 3.1 of the Operating Agreement to provide that the Debtor and his spouse owned 1,000 Shares in the LLC, "jointly . . ., as husband and wife." As the Court has found, before the First Amendment was signed, the Debtor individually owned a separate 50% membership interest in the LLC. The First Amendment had the effect of transferring that property of the Debtor to the Debtor and his spouse, jointly, as husband and wife. The First Amendment also had the effect of transferring the

---

[7] *See* Declaration of John H. Lemanski, Jr. (Docket # 39-2) at ¶¶ 10-12.

separate 50% membership interest previously owned by the Debtor's spouse to the Debtor and his spouse, jointly, as husband and wife. The intended effect of these transfers obviously was to insure that all of the membership interests of the Debtor and his spouse in the LLC would be deemed to be tenancy by the entireties property, and thereby to protect the membership interests with the Michigan statutory exemption for such property.

The Trustee is correct that the First Amendment caused a "transfer" of property of the Debtor, as the term "transfer" is defined in the Bankruptcy Code and under Michigan law. And the Trustee *may* be correct that the Debtor's transfer can be avoided as a fraudulent transfer, under 11 U.S.C. § 548 and/or under the combination of 11 U.S.C. § 544 and Michigan's fraudulent transfer statutes, Mich. Comp. Laws §§ 566.34, 566.35. The Trustee would have to seek such avoidance of the transfer by filing an adversary proceeding, *see* Fed. R. Bankr. P. 7001(1), something the Trustee has not yet done.

As the Trustee points out, the issue of whether the Debtor made a "transfer," and the fact that such a transfer was voluntary, have a bearing on the Exemption Objection, because of 11 U.S.C. § 522(g). The Trustee argues that even if the transfer made by the Debtor in the First Amendment made the membership interests exempt under the Michigan exemption statutes relied on by the Debtor, the Debtor still might end up with no allowable exemption in this bankruptcy case, because of § 522(g). The Trustee reasons that if he is successful in avoiding the Debtor's transfer, and thereby recovering for the bankruptcy estate the Debtor's original 50% membership interest in the LLC, the Debtor then would be unable to claim an exemption in that 50% membership interest, under § 522(g), because the Debtor's transfer was a voluntary transfer. Section 522(g) states:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> (1)(A) **such transfer was not a voluntary transfer of such property by the debtor**; and
>
> (B) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

11 U.S.C. § 522(g) (emphasis added). The Debtor's transfer via the First Amendment clearly was a "voluntary transfer" by the Debtor of his property, within the meaning of 11 U.S.C. § 522(g)(1)(A), because the Debtor voluntarily entered into the First Amendment with his spouse.

Because of the foregoing, the Trustee argues that if the Court does not disallow the Debtor's claimed exemptions entirely at this time, the Court at least should "conditionally deny" the Debtor's exemptions, subject to the outcome of a future avoidance adversary proceeding to be filed by the Trustee.

The Debtor opposes such conditional relief, arguing that there was no "transfer" of the Debtor's property that could be avoided. The Debtor argues, among other things, that the First Amendment cannot be deemed a "transfer" of the Debtor's property, because at the time the First Amendment was executed (March 20, 2020), the Debtor's membership interest in the LLC was worth nothing. This is because at that time, the LLC did not yet have any assets. (That changed 8 days after the First Amendment was signed, however, when the Debtor and his spouse

6

deposited $87,299.42 into a bank account owned by the LLC.)

The Debtor's no-transfer argument is incorrect. Property with no present market value still can *exist*, and still can be transferred. The Debtor cites no authority holding otherwise. The Debtor's 50% membership interest in the LLC was property that could be, and was, transferred, even if that membership interest had no value at the time of the transfer.

"The term 'transfer' means — . . . (D) each mode, direct or indirect, . . ., voluntary or involuntary, of disposing of or parting with — (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).[8] In the First Amendment, the Debtor disposed of and parted with his solely-owned 50% membership interest in the LLC, so that was a "transfer" of the Debtor's property.

If the Debtor is correct that his 50% membership interest had no market value on the date the Debtor transferred it by signing the First Amendment, that might help show, as the Debtor argues, that the Debtor received at least "reasonably equivalent value" in exchange for the transfer. That, in turn, might, as the Debtor argues, preclude the avoidance of the transfer based on constructive fraud grounds, *e.g.*, 11 U.S.C. § 548(a)(1)(B). But it would not necessarily preclude avoidance on the ground that the transfer was made with "actual intent to hinder, delay, or defraud" creditors. *E.g.*, 11 U.S.C. § 548(a)(1)(A).

The Trustee might plausibly allege, for example, that the Debtor's transfer was part of a fraudulent scheme by the Debtor to shield his non-exempt funds (proceeds from the sale of real

---

[8] The Michigan fraudulent transfer statutes contain a very similar definition of the word "transfer," defining it to mean, with exceptions not applicable here, "every mode, direct or indirect, . . . voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." Mich. Comp. Laws § 566.31(q).

7

estate) from his creditors. As noted above, only 8 days after the Debtor made the transfer of his LLC membership interest by signing the First Amendment, the Debtor and his spouse deposited $87,299.42 into a bank account *owned by the LLC*. Those funds were proceeds of the sale of a parcel of real estate that the Debtor and his spouse owned, referred to in the Debtor's Declaration as the Otter Lake property. While the Debtor alleges that this real estate had been held in a tenancy by the entireties ("TBE"),[9] the proceeds from selling this real estate were not necessarily protected by any TBE exemption. And the Debtor admits that he and his spouse signed the First Amendment at a time when they were "preparing to sell" the Otter Lake property.[10]

The Court cannot rule out the possibility that the Trustee would prevail in an action to avoid the Debtor's transfer of his 50% membership interest, as a fraudulent transfer. *See generally Turner Lewis v. Harlin* (*In re Harlin*), 321 B.R. 836 (E.D. Mich. 2005). *Harlin* held that a debtor's use of his individually owned funds to pay down a mortgage on real estate held with his spouse in a tenancy by the entireties could be deemed both a constructively fraudulent transfer and an intentionally fraudulent transfer under Michigan's fraudulent transfer statute. *See Harlin*, 321 B.R. at 843, 845. The court held that "Michigan case law is clear — a payment by an insolvent debtor to enhance property held by the entireties or a payment used to create property held by the entireties is fraudulent as to creditors." *Id.* at 843.

The Court points these things out not to indicate that the Trustee necessarily would

---

[9] *See* Declaration of John H. Lemanski, Jr. (Docket # 39-2) at ¶¶ 9-14.

[10] *Id.* at ¶ 9. And quite apart from the Debtor's transfer of his LLC membership interest, via the First Amendment, the Trustee might plausibly allege that when the Debtor and his spouse placed the proceeds from the sale of their Otter Lake property in a bank account owned by the LLC, they each transferred their personal property (money from the sale of their own real estate) to the LLC, and that in so doing, the Debtor made a fraudulent transfer of his property to the LLC.

8

prevail in an action to avoid the Debtor's transfer made by the First Amendment. Rather, these things show why the Court cannot agree with the Debtor's current argument, that the Trustee could not possibly prevail.

The Court will not decide at this time the ultimate question of whether the Trustee can avoid the Debtor's transfer that was done by the First Amendment. Such a decision must come only if and after the Trustee files an adversary proceeding seeking such relief. But the Court concludes that the Trustee is entitled to the limited relief described in Part III.D of this Opinion, below.

**C. The Trustee's argument that the Second Amendment to the Operating Agreement undid the transfer made by the First Amendment**

The Trustee argues that the Court should disallow the Debtor's claimed exemption now, because of the Second Amendment of the Operating Agreement, signed on or shortly before August 17, 2020. The Second Amendment's primary purpose, according to the Debtor, was to clarify certain language in the Operating Agreement that stated that the organization was to be deemed a partnership, rather than a limited liability company. (Such language was inconsistent with other language in the Operating Agreement.) As with the First Amendment, the Second Amendment was drafted by the Debtor's current bankruptcy attorney. The Trustee relies on the following language in the Second Amendment to argue that the changes made by the First Amendment were undone:

> 3. <u>Ratification of Operating Agreement</u>. The Operating Agreement and Resolutions, which were entered into prior to the filing with the State of Michigan of the Company's Articles of Organization, are ratified by the Members. **The Operating Agreement, as modified by this Amendment, remains in full**

**force and effect.**[11]

The Trustee argues, in effect, that this language in the Second Amendment revived § 3.1 of the original Operating Agreement, which as this Court has found, unambiguously gave the Debtor a separate 50% membership interest in the LLC. There is no language in the Second Amendment that ratifies the First Amendment, or states that it remains in full force and effect. That is stated only as to the original Operating Agreement.

The Debtor disputes the Trustee's argument, and argues that the language above does not mean what the Trustee says it does.

The Court declines to rule, at this time, on this aspect of the parties' dispute. The Court concludes that this issue can and should be decided in and as part of an adversary proceeding. One reason for this is that it is not clear how this issue may interact with the Trustee's possible claim that the First Amendment was an avoidable transfer by the Debtor of his 50% membership interest in the LLC. So far, the parties have not briefed or argued this sufficiently. And the Court finds it appropriate to permit and require this and related issues to be litigated in an adversary proceeding.

**D. The relief to be granted at this time**

Under the circumstances, the Court finds it appropriate to order the following relief at this time. The Court will defer making any final ruling on the merits of the Debtor's claimed exemptions at issue in the Exemption Objection, until after the Trustee has had an opportunity to file an adversary proceeding, and the Court has decided any such adversary proceeding. Such adversary proceeding may seek the avoidance of the Debtor's transfer of his membership interest

---

[11] Second Amendment at 2, § 3 (emphasis added).

in the LLC that was done by the First Amendment, and related relief. Or such adversary proceeding may seek a determination that the effect of the Second Amendment was such that as of the bankruptcy petition date, the Debtor once again had a separate, individually-owned 50% membership interest in the LLC. And such adversary proceeding may seek both forms of relief, in the alternative. *See generally* Fed. R. Civ. P. 8(d)(2), 8(d)(3), Fed. R. Bankr. P. 7008. Such adversary proceeding also may allege any additional avoidance claims, if the Trustee so desires.

The Court will require the Trustee to file any such adversary proceeding no later than June 3, 2022, and if the Trustee fails to file such an adversary proceeding by the June 3, 2022 deadline, the Court will enter an order overruling the Trustee's Exemption Objection.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will prepare and enter a separate order that grants the relief described above.



**Signed on May 20, 2022**

/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**